**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION,**
**Plaintiff–Appellant,**

**v.**

**GENERAL LINES, INC., dba Bi–Rite Payless Drugs, Inc., Bi–Rite Package, Inc., Defendants–Appellees.**

No. 87–1253.

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1989.

John F. Suhre (Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, with him, on the briefs), E.E.O.C., Washington, D.C., for plaintiff-appellant.

Bruce P. Badley (Clay B. Jenkins with him, on the brief), Sheridan, Wyo., for defendants-appellees.

Before MOORE, BARRETT and TACHA, Circuit Judges.

BARRETT, Senior Circuit Judge.

This is an appeal by plaintiff-appellant Equal Employment Opportunity Commission (EEOC) from a final order in an employment discrimination action brought on behalf of Ms. Sandra Angel and Ms. Joyce Christiansen, pursuant to Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a) against General Lines, Inc., d/b/a Bi–Rite Payless Drugs, Inc., and Bi–Rite Package, Inc. (Bi–Rite Liquor), a retail liquor store located in Riverton, Wyoming. EEOC does not challenge the award of back pay. It does, however, challenge the district court's denial of reinstatement or front pay awards to Angel and Christiansen in lieu thereof and the court's refusal to enjoin Bi–Rite Liquor from retaliating against the charging parties or any other employees for opposing employment practices rendered illegal under Title VII.

This action was initiated by EEOC on behalf of Sandra Angel and Joyce Christiansen seeking lost wages, back pay and other relief to enforce the prohibitions against retaliatory discharges proscribed under § 704(a) of Title VII, 42 U.S.C. § 2000e–3 [1]; and § 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) and 29 U.S.C. § 206(d)(1) (The Equal Pay Act).[2] The crux of the EEOC complaint was that on or about November 21, 1982, Ms. Sandra Angel and Ms. Joyce Christiansen, then employed as clerks at Bi–Rite Liquor, spoke with Mr. John Prideaux, co-owner of the business, and expressed their good faith complaint that a Mr. Dick Welch, also a clerk at the liquor store but junior in terms of seniority to them, was being paid a higher hourly wage for the same work. Angel and Christiansen were fired three days later in retaliation for their good faith complaint. The EEOC requested a jury trial on all questions of fact raised by its complaint.

The parties stipulated that the case did not involve any issue of unequal pay and that the pay was equal. (R., Vol. II, pp. 68–9). The district court empaneled an advisory jury pursuant to Fed.R.Civ.P. 39(c). The issue of retaliatory discharge was submitted to the advisory jury, together with

---

1. "It shall be an unlawful employment practice for any employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title...." This section protects employees who lodge good faith complaints of alleged unlawful employment practice.

2. 29 U.S.C. § 215(a)(3) also protects employees who lodge good faith wage complaints. 29 U.S. C. § 206(d)(1) requires equal pay for equal skill and work unless the pay differential is based upon four specific exceptions not relevant here.

the issue of lost wages and back pay. The EEOC, through its expert witness, Ms. Ellen Pearcy, opined that Ms. Christiansen's lost wages-back pay amounted to $4,603.37, excluding interest, and that Ms. Angel's lost wages-back pay amounted to $27,943.92, excluding interest. *Id.* at pp. 78, 80. The jury awarded Ms. Angel the sum of $916.00 and Ms. Christiansen the sum of $1,002.00. The district court entered judgment thereon, with interest at the rate of 6.18 percent (R., Vol. I, Document 97, pp. 1–2).

The EEOC filed a motion requesting that the court enter an order altering or amending the jury verdict granting damages or backpay to Ms. Angel in amount of $27,943.92 and to Ms. Christiansen in amount of $4603.37 pursuant to Fed.R.Civ.P. 59(c) or, in the alternative, a judgment notwithstanding the verdict pursuant to Fed.R.Civ. P. 50(b) to compute and award damages as prayed (R., Vol. I, Document 100). In addition, the EEOC moved the court for judgment on its Title VII claims. *Id.* The court denied each of these motions. Thereafter, the court entered its Findings of Fact and Conclusion of Law on the Title VII claims denying all of the EEOC's requests for equitable relief (R., Vol. I, Document 108). The court found/concluded, *inter alia:*

That Dick Welch, who was hired at Bi-Rite Liquor after Sandra Angel and Joyce Christiansen were hired was paid a higher wage "[b]ecause he performed additional maintenance tasks in defendant's drug store as well as defendant's liquor store."

That Sandra Angel and Joyce Christiansen learned of the wage disparity and, believing in good faith that Bi–Rite Liquor was engaging in an unlawful employment practice by paying Dick Welch a higher hourly wage, contacted and spoke with Mr. John Prideaux, co-owner of Bi–Rite Liquors, on November 21, 1982, and complained about the wage disparity involving substantially the same work;

That three days later, on November 24, 1982, Bi–Rite Liquors discharged Angel and Christiansen and these discharges were in retaliation for their good faith objection to that which they believed to be an unlawful employment practice;

That Bi–Rite Liquors failed to establish a legitimate, nondiscriminatory reason for the discharges of Angel and Christiansen;

That the jury found in favor of Angel and Christiansen but awarded them substantially less back pay than they sought; that denying back pay in these circumstances does not frustrate the broad purposes of Title VII; that Angel and Christiansen obtained employment following their discharges and are no longer entitled to back pay; the court therefore declines to enter a second award of back pay;

That the EEOC failed to show that Bi-Rite Liquors continues to engage in unlawful employment practices and thus there is no need for the permanent injunction requested; further, the injunction requested by the EEOC fails to meet the specificity requirements of Fed.R. Civ.P. § 65(d);

That reinstatement of Sandra Angel and Joyce Christiansen is denied because both found other work following their discharges, and further because Sandra Angel relocated to Montana and reinstatement under these circumstances would not protect her, and further because hostility between Joyce Christiansen and Bi–Rite Liquors was such as to preclude a productive working relationship.

The district court concluded:

This result does not frustrate the objectives of Title VII. Remedies under the Act are intended to achieve equal employment opportunity and to deter employment discrimination. *Albermarle Paper Co. v. Moody,* 422 U.S. [405] at 421 [95 S.Ct. 2362 at 2373, 45 L.Ed.2d 280 (1975)]. Another purpose is to make persons whole for injuries suffered because of unlawful employment discrimination. *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 342 (10th Cir.1975). The remedies sought by plaintiff will not serve the purposes of Title VII given the facts of this case. First, plaintiff failed

to show a continuing practice of employment discrimination. Second, Sandra Angel no longer resides in the community. Third, reinstatement will merely promote friction. Moreover, the jury assessed damages against the defendant. This award will deter future unlawful employment actions by defendant, promote equal employment opportunity, and compensate Sandra Angel and Joyce Christiansen for their injuries.

*Id.* at 3–4.

On appeal, the EEOC contends that the district court erred by (1) refusing to grant reinstatement to Angel and Christiansen, (2) failing to award front pay if reinstatement was inappropriate, and (3) by failing to enjoin the defendant from retaliating in the future.

### I. and II.

EEOC contends that the district court erred by refusing to grant reinstatement to Angel and Christiansen or to award front pay if reinstatement was inappropriate.

Our standard for review is governed by the clearly erroneous rule. We may not set aside trial court findings and determinations on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *Verniero v. Air Force Academy District 20*, 705 F.2d 388 (10th Cir.1983) (a Title VII action). The "clearly erroneous" rule was well articulated in *Higgins v. State of Okla. Ex Rel. Okla. Emp. Sec.*, 642 F.2d 1199, 1202 (10th Cir.1981):

[F]indings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Reyes v. Hoffman*, 580 F.2d 393 (10th Cir.1978). As an appellate court, it

is not for us to determine whether the trial court reached the correct decision, but whether it reached a permissible one in light of the evidence. "When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses." *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir.1977).

Secondly, the grant of affirmative relief pursuant to 42 U.S.C. § 2000e-5(g)[3] "may" be invoked by the district court in order to achieve the "make whole" purposes of Title VII. Thus, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421–22 [95 S.Ct. 2362, 2373–74, 45 L.Ed.2d 280] (1975), the Supreme Court defined the 'discretionary' powers of the district courts under Title VII:

It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.[14]

(Footnote 14: It is necessary, therefore, that if a district court does decline to award backpay, it carefully articulate its reasons). The courts of appeals must maintain a consistent and principled application of the backpay provisions, consonant with the twin statutory objectives, while at the same time recognizing that the trial court will often have the keener appreciation of these facts and circumstances peculiar to particular cases.

This court has held that the "application of equitable doctrines rests in the sound discretion of the district court; absent a showing of abuse of discretion, the district court's exercise thereof will not be disturbed on appeal." *McKinney v. Gannett Co., Inc.*, 817 F.2d 659, 670 (10th Cir.1987). In *Hecht Co. v. Bowles*, 321 U.S. 321, 329–

---

**3.** "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice ... the court may enjoin the respondent from engaging in such unlawful employment practice,

and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate."

30, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944), the Supreme Court observed:

> The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.

■ Although nothing in the district court's order or the briefs of the parties describe this case as one in which the employer, Bi–Rite Liquor, had both discriminatory and nondiscriminatory motives—or mixed or dual motives—for the decision to terminate the employment of Ms. Angel and Ms. Christiansen, we deem this to be such a case. In our view, this analysis properly accounts for the trial court's order. In *Bibbs v. Block*, 778 F.2d 1318 (8th Cir.1985), the *en banc* court, in a Title VII case, held that once a plaintiff establishes a violation of Title VII by proving that an unlawful employment practice motive was a discernible factor at the time the unlawful employment decision was made, the plaintiff has established a Title VII violation and is entitled to some relief. However, even after the finding of unlawful employment practice is made, the defendant is allowed a further defense in order to limit the relief by proving by a preponderance of the evidence that the plaintiff would not have been hired or promoted (or retained) even in the absence of the proven discrimination.

Nowhere in Title VII is there any reference to mixed or dual motives. In *Bibbs v. Block, supra*, the court applied a "but-for" or "same decision" test:

> In that statute (Title VII), Congress has made unlawful any kind of racial discrimination, not just discrimination that actually deprives someone of a job. A defendant's showing that the plaintiff would not have gotten the job anyway does not extinguish liability. It simply excludes the remedy of retroactive pro-

motion or reinstatement.... Under this approach, once the plaintiff has established a violation of Title VII by proving that an unlawful motive played some part in the employment decision or decisional process, the plaintiff is entitled to some relief, including, as appropriate, a declaratory judgment, partial attorneys' fees, and injunctive relief against future or continued discrimination. *However, even after a finding of unlawful discrimination is made, the defendant is allowed a further defense in order to limit the relief.* The defendant may avoid an award of reinstatement or promotion and back pay if it can prove by a preponderance of the evidence that the plaintiff would not have been hired or promoted even in the absence of the proven discrimination. (Emphasis supplied).

778 F.2d at 1323, 1324.

We have not found any Supreme Court opinion or one from this court which has addressed the mixed motives issue as in *Bibbs v. Block, supra.* However, the Supreme Court, in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a 42 U.S.C. § 1983 civil rights case, held that evidence that a teacher's constitutionally protected conduct played a substantial part in the school board's decision not to rehire him did not dictate any remedial action where the evidence showed that for good cause the school board would have reached the same result. The Court observed:

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse position than if he had engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record....

429 U.S. at 285–86, 97 S.Ct. at 575.

This court has recognized and applied the mixed motives analysis, but only in regard

to whether the discriminatory practice was the "determining factor" in the employer's decision. *Pitre v. Western Elec. Co., Inc.,* 843 F.2d 1262, 1265–66 (10th Cir.1988); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1542 (10th Cir.1987); *E.E.O.C. v. Prudential Federal Sav. and Loan Ass'n.,* 763 F.2d 1166, 1171 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *E.E.O.C. v. University of Oklahoma,* 774 F.2d 999 (10th Cir.1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986); *Love v. Re/Max of America, Inc.,* 738 F.2d 383, 385 (10th Cir. 1984); *Higgins v. State of Okla. Ex Rel. Okla. Emp. Sec.,* 642 F.2d 1199, 1201–02 (10th Cir.1981).

We believe that the "mixed motives" issue analyzed and discussed in *Bibbs v. Block* is fully applicable in the instant case, and accounts for the trial court's denial of any relief beyond the backpay awards granted Ms. Angel and Ms. Christiansen. *Bibbs v. Block, supra,* stands for the proposition that in Title VII mixed motives cases, the plaintiff is entitled to some remedy once the discriminatory practice has been proved, even though the employer has established that the same decision would have been made, absent the discrimination. That scenario substantially explains both the advisory jury's backpay damages awards ($916.00 awarded to Ms. Angel against $27,943.92 claimed; $1002.00 awarded to Ms. Christiansen against $4,603.37 claimed) and the trial court's disposition of the balance of the Title VII claims. The result is, we believe, justified based on the evidence in the record and the fact that "[t]he trial court has wide discretion in fashioning remedies to make victims of discrimination whole." *Sears v. Atchison, Topeka & Santa Fe Ry.,* 645 F.2d 1365, 1378 (10th Cir.1981), *cert. denied* 456 U.S. 964, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982).

## A.

### *Reinstatement*

The EEOC complaint filed in the district court requested that Ms. Angel and Ms. Christiansen be compensated and reinstated. (R., Vol. I, Document 1, p. 5). The right to such relief was put at issue by Bi–Rite Liquor's Answer which contained a general denial (R., Vol. I, Document 3). Significantly, at trial, some thirty two (32) months following their discharges and at a time when both Ms. Angel and Ms. Christiansen were residing in the State of Montana (see R., Vol. II, pp. 42, 121), neither party, under extensive direct and cross-examination, gave any testimony that they wished to be reinstated in their former positions at Bi–Rite Liquors or that they would return to Riverton, Wyoming, if reinstatement were ordered by the court.

We recognize that in *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945 (10th Cir.1980) and *Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129 (10th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983), we held that the trial court may restore the plaintiff to the position he would have held but for the discrimination, even though such relief was not sought in the pleadings. In *Fitzgerald v. Sirloin* we observed that the evidence revealed such an atmosphere of hostility that reconciliation was impossible and the trial court did not err in awarding front pay in lieu of reinstatement. In *Whatley v. Skaggs,* the plaintiff employee, following his dismissal, moved from Denver, Colorado, where he had been employed by the defendant to Mesa, Arizona, in part for health reasons. He did not request reinstatement. We observed that the district court "[m]ay fashion an order in such cases to eliminate the effects of discrimination and to restore the plaintiff to the position he would have held but for the discrimination, and such equitable relief may be provided, even if it was not sought in the pleadings." 707 F.2d at 1137.

Even though the district court had the power, under Title VII, to grant the equitable relief of reinstatement in keeping with the congressional purpose that the court provide "the most complete relief possible," *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45

L.Ed.2d 280 (1975), there is nothing in this record beyond the EEOC request for reinstatement contained in its complaint which indicates that Ms. Angel and Ms. Christiansen, or either, would return to Riverton, Wyoming, from their respective homes in Montana in order to resume their work at Bi–Rite Liquors. Appellant EEOC contends that this case is completely different from *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975) (where plaintiff testified that he did not wish to be returned to the job he had when discharged) because here the charging parties want to be reinstated to the same jobs they had before they were unlawfully discharged (Brief of Appellant, pp. 12–13). But there was *no evidence* of any kind offered by EEOC in this record to support that contention. In fact, notwithstanding the extensive direct examination and cross-examination of Ms. Angel and Ms. Christiansen, neither expressed any interest in being reinstated.

We believe that the district court did assume that Ms. Angel would not return to Riverton if reinstatement were ordered. In our view this is, contrary to EEOC's brief ("makes little sense," Appellant's Brief, p. 14), perfectly logical under the totality of the circumstances. The failure of Ms. Angel and Ms. Christiansen to give any trial testimony relative to reinstatement is the more perplexing in light of Ms. Angel's testimony given on August 18, 1986, i.e., that when she filed charges with the EEOC on January 20, 1983, she wanted her job back (R., Vol. II, p. 62).

Reinstatement is one of the express affirmative actions authorized under § 42 U.S.C. § 2000e–5(g) and certainly "front pay" would qualify as "other equitable relief" the court may grant if deemed appropriate. Both remedies were considered and rejected by the trial court. Specifically, the court found/concluded that Sandra Angel no longer resides in the (Riverton) community, clearly indicating that reinstatement was not a feasible, practical remedy. The record shows that Ms. Christiansen also resided in the State of Montana at the time of trial and there is nothing in the record beyond the request for reinstatement contained in the EEOC complaint indicating

that she would return to Riverton if the court ordered her reinstatement. With regard to damages, the court observed that "[t]he jury assessed damages against defendant. This award will deter future unlawful employment actions by defendant, promote equal employment opportunity, and compensate Sandra Angel and Joyce Christiansen for their injuries." (R., Vol. I, Document 108, p. 7). Clearly, the trial court concluded that in this case the jury's backpay award fully compensated Sandra Angel and Joyce Christiansen.

EEOC argues that because the jury returned a damage award in favor of Ms. Angel and Ms. Christiansen, it necessarily found that the charging parties were discharged in retaliation for complaining about unequal pay and that the reasons proffered by the defendant were not true (Brief of Appellant, p. 19). This contention, while true, is misleading. The jury damage award stands for the proposition that the jury was convinced, by a preponderance of the evidence, that *at the time of the discharges* of Ms. Angel and Ms. Christiansen, the reason therefore on the part of Bi–Rite Liquor was retaliation against Ms. Angel and Ms. Christiansen for their good faith complaint about the disparity they perceived between their wage and that of Mr. Welch, rather than the poor performance work records advanced by Bi–Rite Liquor. Thus, the jury found that *at the time of the discharges* the reasons advanced by Bi–Rite Liquor for the terminations were a pretext. That does not mean that the jury found that the work performances of Ms. Angel and Ms. Christiansen were good. The jury damage award was far below the sums sought by EEOC. Although not in issue on appeal, we observe that after the district court entered judgment on the jury verdict, EEOC moved, *inter alia:*

4. The Plaintiff requests this Court enter an order altering or amending the jury verdict granting damages or backpay to Ms. Angel and Ms. Christiansen in accordance with its exhibits numbers 17(a) and 18(a), pursuant to Rule 59(e). [These exhibits set forth the basis for the EEOC's claims on behalf of Ms. Angel

for backpay of $27,943.92 and Ms. Christiansen for backpay of $4,603.37). As established by the weight of the evidence, exhibits 17(a) and 18(a) were not properly considered by the jury. Therefore, Plaintiff is entitled to have the jury verdict amended to increase the amount of backpay due.

5. In the alternative, the jury failed to take into consideration or compute a reasonable amount of backpay as damages due to Ms. Angel and Ms. Christiansen. As a result, Plaintiff is entitled to a judgment notwithstanding the jury verdict entered on August 21, 1986. It is within the court's province to correct the amount given by this verdict and enter a verdict for the amounts shown on Plaintiff's exhibits 17(a) and 18(a), pursuant to rule 50(b) of the Federal Rules of Civil Procedure.

(R., Vol. I, Document 100).

The district court denied this motion and entered judgment on the remaining Title VII claims on December 8, 1986. As previously stated, EEOC does not challenge the sufficiency of the jury verdict on appeal. Notwithstanding, EEOC argues that because the jury found that Ms. Angel and Ms. Christiansen were discharged in retaliation for complaining about unequal pay, the "[c]ourt, when ruling on the accompanying equitable claims, was bound by the jury's factual determinations on the legal issue ... and 'was not at liberty to make findings that conflicted with the jury's findings,' (*quoting Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1097 (11th Cir.1987)." (Brief of Appellant, pp. 19–20).

The EEOC misconceives the function of the advisory jury. In *Trotter v. Todd*, 719 F.2d 346 (10th Cir.1983) this court, in a Title VII case, held that the district court did not abuse its discretion in impaneling an advisory jury pursuant to Fed.R.Civ.P. 39(c) and that when we review a judgment "[w]here the jury's findings are advisory only, we must apply the 'clearly erroneous' test to the court's findings.... The findings of the trial court are not clearly erroneous unless a complete review of the record definitely and firmly convinces us

that a mistake has been made." 719 F.2d at 348–49.

The evidentiary burdens and the presentation of proof in Title VII cases which this court has described as a three stage process, *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1378 (10th Cir.1984), apply to facts and circumstances determinative of the question whether at the time of the plaintiff's discharge, the termination was based on an unlawful or discriminatory employment practice or was justified for valid business reasons. A district court, when determining whether to grant equitable relief, such as reinstatement, is not confined to the facts determinative of the discharge issue. The court may rely on all of the evidence adduced at trial and may draw all reasonable inferences therefrom. And the scope of our review of the trial court's findings under the clearly erroneous standard is narrow when a fact determination is predicated upon the trial court's assessment of credibility. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

The district court found that Ms. Angel had "[r]elocated to Montana [and] reinstatement will not protect Sandra Angel or demonstrate the employer's good faith to other employees." (R., Vol. I, Document 108, pp. 5–6). The only reasonable inference to be drawn from this finding is that Ms. Angel did not wish to return to her job at Bi–Rite Liquor in Riverton, Wyoming. Although the trial court did not make a similar finding in the case of Ms. Christiansen, the record demonstrates that she, too, moved to Corvallis, Montana, where she was residing at the time of trial and that nothing in her trial testimony shows that she would return to her job at Bi–Rite Liquor in Riverton, Wyoming. In *Griess v. State of Colo.*, 841 F.2d 1042, 1047 (10th Cir.1988), we said, *quoting Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) that we are "[f]ree to affirm a district court decision on any ground for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Thus, we consider the trial court's finding that reinstate-

ment will not protect Ms. Angel because she resides in Montana, equally applicable to Ms. Christiansen. It is difficult to understand or perceive why Ms. Angel and Ms. Christiansen did not testify that they wished to be reinstated in their prior jobs at Bi–Rite Liquor if in fact they desired this remedy. We conclude that the trial court did not err in denying the remedy of reinstatement because both Ms. Angel and Ms. Christiansen had relocated to the State of Montana.

Further, the trial court found that reinstatement of Ms. Angel and Ms. Christiansen "will promote friction" and that, in the case of Joyce Christiansen, "hostility between the parties will preclude a productive working relationship." We hold that these findings are not clearly erroneous. A summary review of some of the trial testimony will demonstrate the basis for the trial court's findings.

Mr. Eugene Ratliff, who served as a manager at Bi–Rite Liquor during the employment of Ms. Angel and Ms. Christiansen, testified that: while Ms. Angel and Ms. Christiansen performed their work assignments as clerks satisfactorily "at first" (R., Vol. III, p. 13), their work deteriorated after Mr. Welch was hired, *id.* at 13–14; Ms. Angel and Ms. Christiansen did not do certain work assigned to clerks such as dusting, emptying boxes, and displaying liquor or rotating the beer, *id.* at 18–20; during their last few months at Bi–Rite Liquor, the work performances of both Ms. Angel and Ms. Christiansen deteriorated in that they were slow while waiting on customers, sharp with customers thus drawing complaints, not properly attired, and they left cash registers unattended. *Id.* at 30, 32–33, 36; and the work performance of Ms. Angel and Ms. Christiansen was poor. *Id.* at 37, 39.

Ms. Sandra Gilpen–Winter, who served as general or overall manager of the combined drugstore and Bi–Rite Liquor store, doing business in the same building, testified that: after Mr. Welch was hired in 1982, the productivity in the liquor store became nominal and the whole appearance of the operation was poor; she observed a lot of "socializing" on the job between Ms. Esther Wicker, Ms. Angel and Ms. Christiansen; Ms. Christiansen's wearing attire was below standard; the liquor stock in the store was not being dusted and the shelves were not being stocked so as to look full, and the work performances of Ms. Angel and Ms. Christiansen were below standard. *Id.* at 130–39. She stated that when she met with Mr. Prideaux and Mr. Ratliff, the three conducted an overall evaluation of the liquor store and its employees and concluded that the liquor store would operate much better if Ms. Wicker, Ms. Angel and Ms. Christiansen were terminated. *Id.* at 142.

Ms. Angel testified that Mr. Welch, as night manager of the liquor store, used foul language and made dirty remarks, and that both Mr. Ratliff and Mr. Welch were "very suggestive." (R., Vol. II, pp. 58–59). Even so, she was content with her job except for what she perceived to be the unequal pay between Mr. Welch and the female clerks. *Id.* at 70. Ms. Angel testified that when she filed charges against Bi–Rite Liquor with both EEOC and the State of Wyoming, she wanted her job back. *Id.* at 62–63. She stated that she does not now consider Mr. Prideaux a very fair man. *Id.* at 113. She gave no trial or deposition testimony that she desired her job back, although she stated that she would not have moved back to Montana if she could have continued her work at Bi–Rite Liquor. *Id.* at 120.

Ms. Christiansen testified that the only things she did not like about her job at Bi–Rite Liquor were the crude, obscene comments made by Mr. Welch and the pinching of her legs by Welch. She denied being a poor worker. *Id.* at 142–43, 163.

Ms. Mary Ellen Felton, who worked as assistant manager at Bi–Rite Liquor during the time Ms. Angel, Ms. Christiansen and Mr. Welch worked there, testified that all three were good workers and that she had no problems with them. *Id.* at 182–87.

The trial court heard the testimony of these and other witnesses and observed their demeanor. The trial judge found that reinstatement of Ms. Angel and Ms. Chris-

tiansen should not be ordered because Ms. Angel had relocated to Montana, the hostility between Ms. Christiansen and Bi–Rite Liquor, and the friction between the parties. These findings are not clearly erroneous. EEOC contends otherwise relying on *E.E.O.C. v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166, 1172 (10th Cir.), *cert. denied* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985), an ADEA case, wherein we held that reinstatement may not be appropriate where the employer has exhibited such "extreme hostility" as to render a good working relationship impossible. EEOC argues that the "extreme hostility" standard has not been met here. (Brief of Appellant, pp. 17, 18). Further, EEOC points to *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957 (10th Cir.1980), a Title VII case, where we observed that the trial court denied reinstatement because the defendant employer had "engaged in psychological warfare" against the plaintiff. Yet, the criteria for reinstatement was identified in *Sirloin Stockade* as the need for a "warm relationship." *Id.* Furthermore, the trial court in that case denied reinstatement "[o]n the ground that the environment was hostile." *Id.* at 956. In the case at bar, the trial court denied reinstatement based upon the hostility between the parties and the friction likely to impede a good working relationship.

The trial judge heard the testimony of the witnesses and observed their courtroom demeanor. He was in a much better position to determine whether the relationship between the parties justified the remedy of reinstatement than this court. The resolution of conflicting evidence and the determination of credibility are matters particularly assigned to the trier of fact.

## B.

### *Front Pay*

■ EEOC contends that after the district court denied Ms. Angel and Ms. Christiansen the remedy of reinstatement, it erred by failing to award them front pay even though it was not requested.

The trial court was cognizant of the broad purposes of Title VII and the equitable remedies available to the district courts under 42 U.S.C. § 2000e–5(g). (R., Vol. I, Document 108, pp. 4–5). Even so, the court concluded that the back pay damages awarded would deter future unlawful employment actions by Bi–Rite Liquor, promote equal employment opportunity and "[c]ompensate Sandra Angel and Joyce Christiansen for their injuries." *Id.* at 7. In *Pitre v. Western Elec. Co., Inc.,* 843 F.2d 1262 (10th Cir.1988), we observed that front pay "[i]s intended to compensate victims of discrimination for the continuing *future* effects of discrimination until the victim can be made whole. For example, front pay is a substitute for promotion which cannot be effected because no positions are presently available."

The trial court, based on *credibility* determinations, found/concluded that: although Ms. Angel and Ms. Christiansen were in good faith when they complained to Mr. Prideaux that Mr. Welch was being paid a higher wage than they were receiving although he was performing substantially the same work, Welch's hourly wage was higher because he did in fact perform additional maintenance tasks; hostility between the parties will preclude a productive working relationship; and the level of friction was high before Angel and Christiansen were discharged. (R., Vol. I, Document 108).

A summary of some of the conflicting testimony presented at trial upon which the district court's findings were based, all of which involved credibility determinations, follows. Mr. Ratliff testified that Mr. Welch was paid a higher wage because he performed additional maintenance tasks and that he (Ratliff) had so informed Ms. Angel and Ms. Christiansen (R., Vol. III, pp. 13–27). Ms. Angel, on the other hand, testified that Mr. Welch did not perform any duties other than those of a clerk (R., Vol. II, p. 48), and that when she asked Mr. Ratliff why Welch had been promoted to night manager and paid a higher wage than the female clerks, Ratliff responded that he wanted a man in charge at night and could not obtain the services of a man

at the hourly wages being paid the female clerks. *Id.* at 50–55. Ms. Christiansen testified that when she learned that Mr. Welch was being paid a higher hourly wage than she was receiving, she inquired of Mr. Ratliff about the matter and that Ratliff responded that he could not hire a man to do the same job at a female clerk's wage (R., Vol. II, p. 132). She also testified that she never observed Mr. Welch doing any maintenance work, *id.* at 168, and that when she spoke with Mr. Prideaux on November 21, 1982, she complained about Welch being promoted to night manager, about Welch pinching her on the legs and that Welch intentionally stacked the beer so high that it would fall down on her. *Id.* at 171–72. We have heretofore summarized trial testimony relative to the work performances of Ms. Angel and Ms. Christiansen. All of this testimony, with its attendant credibility factor, convinced the trier of fact, the trial court, that under "these circumstances" the jury's award of back pay, although substantially less than that sought, "does not frustrate the broad purposes of Title VII" and fully compensates Ms. Angel and Ms. Christiansen for their injuries. (R., Vol. I, Document 108).

### III.

Finally, EEOC contends that the district court erred by failing to enjoin Bi-Rite Liquor from retaliating in the future. While EEOC recognizes that this is a matter within the trial court's discretion, it argues that, under *Albemarle Paper Co. v. Moody,* 422 U.S. at 416, 95 S.Ct. at 2371, such discretion cannot be "unfettered" but must be "guided by sound legal principles." (Brief of Appellant, p. 21). EEOC relies on *James v. Stockham Values and Fittings Co.,* 559 F.2d 310 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), for the rule that once a Title VII violation is proven, the burden is on the defendant to show that it will no longer fail to comply with the law, and failure to do so renders an injunction mandatory. EEOC failed to point out, however, that *James v. Stockham* involved a class action suit challenging patterns of discriminatory practices in employment at the Stockham manufacturing facilities in Birmingham, Alabama, including segregated facilities and programs, job assignments, transfer, promotion, training, recruiting, seniority and testing.

In *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), the Supreme Court stated that the purpose of injunctive relief is to prevent future violations and the moving party must demonstrate that there exists some cognizable danger of recurrent violations, something more than a mere possibility, which serves to keep the case alive. Unlike the proof in *James v. Stockham, supra,* there is nothing in the record in the instant case indicating "some cognizable danger" that Bi-Rite Liquor will at any future date participate in a like Title VII violation.

There is no evidence in the record on appeal that Bi-Rite Liquor has any unlawful employment "practice" or "policy" which it has followed, and certainly there was no pattern established. This was a single occurrence violation. In *Gurule v. Wilson,* 635 F.2d 782, 791 (10th Cir.1980), we observed:

> Injunctive relief is designed to deter future wrongful acts. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The likelihood of future violations is inferred from the totality of circumstances, including the commission of past illegal conduct.

There is no reason to believe that the single unlawful employment practice violation caused by Bi-Rite will likely occur again.

We AFFIRM.