Caryn McCUE, Plaintiff,

v.

STATE OF KANSAS, DEPARTMENT OF HUMAN RESOURCES, Defendant.

Civil Action No. 95–CV–2116–DES.

United States District Court, D. Kansas.

Nov. 18, 1996.

Timothy W. Monsees, Monsees, Miller & Defeo, Kansas City, MO, for plaintiff.

John M. Cassidy, Office of Attorney General, Topeka, KS, Michael E. Francis, Deanne W. Hay, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

The above-captioned matter was tried to a jury beginning on September 16, 1996. On September 20, 1996, the court instructed the attorneys of record that it would present the calculation of both past wage and benefit loss ("back pay") and future wage and benefit loss ("front pay") to the jury. Because the parties disagreed over whether back pay and front pay were matters for the court or matters for the jury to decide, the court permitted the parties to brief the issue of whether the court would be bound by any amounts of back pay or front pay determined by the jury.

On September 24, 1996, the jury returned a verdict for the plaintiff, Caryn McCue. The jury determined that the plaintiff should recover $75,000 for lost past wages and benefits, $175,000 for lost future wages and benefits, and $50,000 for emotional pain, suffering, inconvenience, and mental anguish. The parties have briefed the back pay/front pay issue, and the court is now ready to enter judgment.

## I. DISCUSSION

### A. Front pay

Ms. McCue brought this retaliatory discharge action under 42 U.S.C. § 2000e–3(a). 42 U.S.C. § 1981a(a)(1) provides that plaintiffs suing under § 2000e–3 may recover compensatory and punitive damages, in addition to any relief authorized by 42 U.S.C. § 2000e–5(g). Section 1981a(c)(1) further provides that a complaining party seeking compensatory or punitive damages may demand a trial by jury.

The parties do not dispute the fact that the plaintiff was entitled to have a jury decide the amount of damages she should receive for emotional pain, suffering, inconvenience, and mental anguish, in that such damages are compensatory in nature. The parties disagree, however, as to whether the court is bound by the jury's determinations as to "back pay" and "front pay." Section 1981a(b)(2) provides that "[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under ... 42 U.S.C.A. § 2000e–5(g)." Section 1981a(b)(3), which imposes limitations on compensatory and punitive damage awards, defines compensatory damages to include "damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."

The plaintiff maintains that "future pecuniary losses" encompasses front pay, and that the calculation of front pay is thus a jury question. The defendant argues that front pay was one type of relief authorized by

§ 2000e–5(g), and is therefore excluded from the compensatory damages category by § 1981a(b)(2). Section 2000e–5(g) authorized the court to order "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." In *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1561 (10th Cir.1989), the United States Court of Appeals for the Tenth Circuit noted that "[r]einstatement is one of the express affirmative actions authorized under § 42 U.S.C. § 2000e–5(g) and certainly 'front pay' would qualify as 'other equitable relief' the court may grant if deemed appropriate."

While courts may have, under appropriate circumstances, awarded front pay under § 2000e–5(g), the court is unpersuaded that the clear language of § 1981a(b)(3), which defines compensatory damages to include damages for future pecuniary loss, precludes the court from submitting the question of front pay to the jury. The United States Supreme Court, in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), shed some light on the construction of § 1981a:

> Before the enactment of the 1991 Act, Title VII afforded only "equitable" remedies. The primary form of monetary relief available was backpay. Title VII's back pay remedy, [§ 2000e–5(g) ], modeled on that of the National Labor Relations Act, is a "make-whole" remedy that resembles compensatory damages in some respects.
>
> .     .     .     .     .
>
> [Section 1981a] significantly expands the monetary relief potentially available to plaintiffs who would have been entitled to backpay under prior law. Before 1991, for example, monetary relief for a discriminatorily discharged employee generally included "only an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits." Under [§ 1981a], however, a Title VII plaintiff who wins a backpay award may also seek compensatory damages for "fu-

ture pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."

*Id.* at 252–53, 114 S.Ct. at 1490–91 (footnotes and citations omitted). If, as the Supreme Court observed, § 2000e–5(g) generally limited a plaintiff's monetary relief to back pay, then front pay would not be excluded from the computation of compensatory damages as relief which was authorized under § 2000e–5(g).

The fact that the Tenth Circuit stated in *General Lines* that the award of front pay qualified as "other equitable relief" under § 2000e–5(g) is not in conflict with the decision to submit the issue of front pay to the jury. In *General Lines*, a retaliatory discharge case under Title VII, the plaintiff sought reinstatement. 865 F.2d at 1560. The district court · denied the request for reinstatement, and the plaintiff appealed. *Id.* at 1558. The plaintiff contended that the court erred by refusing to grant reinstatement, or, in the alternative, by failing to award front pay if reinstatement was inappropriate. *Id.* After noting that "[r]einstatement is one of the express affirmative actions authorized under § 42 U.S.C. § 2000e–5(g)" and that " 'front pay' would qualify as 'other equitable relief' the court may grant if deemed appropriate," the Tenth Circuit agreed with the district court that neither remedy was justified under the facts of that case. *Id.* at 1565.

Unlike the plaintiff in *General Lines*, Ms. McCue did not seek reinstatement. An award of front pay in these circumstances is more properly classified as damages for future pecuniary losses under § 1981a(b)(3) than as "other equitable relief" under § 2000e–5(g). *See, e.g., Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596, 606 (D.Me.1994) (emphasis added) (citation omitted) ("*Because* Plaintiff presents frontpay as an alternative to reinstatement, it is closely intertwined with reinstatement and the Court will also consider it an equitable remedy.").

Nor does the fact ·that the Tenth Circuit held in *Denison v. Swaco Geolograph Co.*,

941 F.2d 1416, 1426–27 (10th Cir.1991), that the calculation of front pay in an age discrimination action is an equitable issue to be resolved by the court, change our analysis. 29 U.S.C. § 626(b), the section of the Age Discrimination in Employment Act ("ADEA") which provides for damages, states that the court can grant "such legal or equitable relief as may be appropriate to effectuate the purposes [of the ADEA], including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation. . . ." On the other hand, § 1981a(b)(3) specifically defines compensatory damages to include damages for future pecuniary losses. *See also Hutchison v. Amateur Electronics Supply, Inc.,* 840 F.Supp. 612, 621 n. 7 (E.D.Wis.1993), *aff'd in part, rev'd in part,* 42 F.3d 1037 (7th Cir.1994) (front pay is equitable remedy under ADEA because it is granted in lieu of reinstatement, but front pay is clearly awardable under the compensatory damages provision of § 1981a). Furthermore, to the extent that the defendant seeks to analogize Title VII retaliatory discharge actions to ADEA actions, the court notes that the issue of back pay is submitted to the jury in ADEA cases, which is contrary to the defendant's argument that back pay is an equitable remedy in Title VII cases. *See, e.g., Denison,* 941 F.2d at 1419.

In § 1981a(b)(2), Congress explicitly excluded back pay from compensatory damages; had Congress intended to similarly exclude front pay, it could easily have done so. We conclude that the court properly submitted the issue of front pay to the jury, and shall enter judgment on the jury verdict for $175,000 for front pay.

### B. *Back pay*

■ The court agrees with the defendant that the determination of back pay is a question for the court. 42 U.S.C. § 2000e–5(g) provides that *"the court* may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative relief as may be appropriate, which may include, but is not limited to, reinstate-

ment or hiring of employees, with or without back pay. . . ." (emphasis added). *See also Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 226, 102 S.Ct. 3057, 3062, 73 L.Ed.2d 721 (1982) (power to award back pay is an equitable remedy to be utilized by the court). We therefore consider the jury's determination of back pay as advisory pursuant to Fed. R.Civ.P. 39(c).

■ If a Title VII plaintiff establishes liability, the court should award back pay unless special circumstances exist. *Dutton v. Johnson County Bd. of County Comm'rs,* 868 F.Supp. 1260, 1263–64 (D.Kan.1994) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)). Back pay may include recovery of fringe benefits or entitlements. *Id.* at 1264. Reviewing the evidence presented at trial, the court finds that the defendant discharged the plaintiff on August 19, 1993. Ms. McCue was earning $27,698 per year at the time of her discharge, plus approximately $9,000 per year in fringe benefits. Therefore, the plaintiff's total lost earnings for three years, without benefits, equal $83,094; earnings inclusive of benefits equal approximately $110,094. After deducting $30,000 for the amount which Ms. McCue earned after her discharge, we arrive at $53,094 past wages without benefits, and $80,094 with benefits.

■ The defendant argues that because Ms. McCue testified that she could earn as much as a waitress as she did working for the State as a special investigator, the court should decrease the plaintiff's back pay award. It is true that a Title VII claimant has a statutory duty to minimize damages. *See* § 2000e–5(g) ("[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable"). The claimant is not required, however, to enter another line of work; she forfeits her right to back pay only if she refuses a job substantially equivalent to the one from which she was fired. *Ford,* 458 U.S. at 231–32, 102 S.Ct. at 3065–66. The defendant has the burden of showing that the plaintiff did not exercise reasonable diligence in pursuing substantially equivalent work. *United States v. Lee Way Motor Freight,*

*Inc.*, 625 F.2d 918, 937 (10th Cir.1979). In this case, the defendant has failed to sustain its burden.

■ We also decline the defendant's invitation to deduct the $8,540 in unemployment compensation which the plaintiff received after her discharge. The decision whether to offset unemployment compensation is within the court's discretion. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1555 (10th Cir.1988). Unemployment compensation is a collateral source which is traditionally not deducted from a back pay award, however, primarily because it is unfair to give the defendant the benefit of it. *Aguinaga v. United Food & Commercial Workers Int'l Union*, 720 F.Supp. 862, 876 (D.Kan.1989), *aff'd in part, rev'd in part*, 993 F.2d 1463 (10th Cir.1993), *cert. denied*, 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). Given the above range of back pay figures of $53,-094 to $80,094, we determine that $75,000 represents an adequate and reasonable award of back pay, and adopt the jury's finding on this matter.

■ Finally, the district court is authorized to grant prejudgment interest on back pay awarded under Title VII. *Loeffler v. Frank*, 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988). The appropriate rate of interest is within the court's discretion. *McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 882 (S.D.N.Y.1995). We therefore order that the postjudgment interest rate as provided in 28 U.S.C. § 1961(a) be applied to the award of back pay, from August 19, 1993, the date of the plaintiff's discharge, through today's date. *See id.* at 882.

**IT IS THEREFORE BY THE COURT ORDERED** that judgment be entered in accordance with the jury's verdict in favor of the plaintiff. The plaintiff shall recover $175,000 for loss of future wages and benefits, and $50,000 for emotional pain, suffering, inconvenience, and mental anguish, with postjudgment interest as provided in 28 U.S.C. § 1961(a).

**IT IS FURTHER ORDERED** that judgment be entered in favor of the plaintiff as to the plaintiff's claim for loss of past wages and benefits in accordance with the above-stated findings of fact and conclusions of law. The plaintiff shall recover $75,000 for loss of past wages and benefits, with prejudgment and postjudgment interest as provided in 28 U.S.C. § 1961(a) and as set forth above.