E. Jean (Calloway) CARTER,
Plaintiff–Appellant,

v.

SEDGWICK COUNTY, KANSAS; the Board of County Commissioners of Sedgwick County, John R. Cameron, Michael R. Brand, Donald E. Gragg, Tom Scott, Bernard Hentzen, and Timothy Witsman, Defendants–Appellees.

No. 92–3029.

United States Court of Appeals,
Tenth Circuit.

Sept. 23, 1994.

J. Greg Kite, Wichita, KS, for plaintiff-appellant.

Edward L. Keeley (Alan L. Rupe with him on the brief) of Alan L. Rupe Law Offices, P.A., Wichita, KS, for defendants-appellees.

Before SEYMOUR, Chief Judge, MOORE, Circuit Judge, and BURCIAGA *, District Judge.

SEYMOUR, Circuit Judge.

Jean Carter, who is black, sued Sedgwick County, its county commissioners, and the assistant director of the County's Department of Community Corrections, alleging, inter alia, that defendants discriminated against her on the basis of her race when they terminated her employment with the Department. She initially won a judgment, which this court reversed in part and remanded for further proceedings. Ms. Carter now appeals from the district court's decision on remand, raising issues involving the court's calculation of interest and attorneys fees in connection with her successful claim under 42 U.S.C. § 2000e *et seq.* (Title VII). She also asserts that the 1991 Civil Rights Act should be applied to her retroactively. We affirm in part, reverse in part, and again remand for further proceedings.

I.

Ms. Carter initially asserted her claims for race discrimination under 42 U.S.C. § 1981

* The Honorable Juan G. Burciaga, Chief Judge, United States District Court for the District of New Mexico, sitting by designation.

and 42 U.S.C. §§ 2000e *et seq.* (Title VII). After a bench trial, the district court ruled in favor of Ms. Carter on these charges. *See Carter v. Sedgwick County,* 705 F.Supp. 1474 (D.Kan.1988) (*Carter I* ). The court entered judgment against the assistant director under section 1981 for $100,000 in compensatory damages and $10,000 in punitive damages. In addition, the court awarded Ms. Carter lost income in the amount of $10,748.05 against the Sedgwick county commissioners and directed that she either be reinstated or paid her previous salary.

Defendants appealed. While the appeal was pending, the Supreme Court decided *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which held that section 1981 does not apply to discriminatory conduct occurring after an employment contract is formed. On appeal, we applied our decision in *Trujillo v. Grand Junction Regional Ctr.,* 928 F.2d 973 (10th Cir.1991), which held in light of *Patterson* that section 1981 does not cover a discriminatory race-based discharge. *See Carter v. Sedgwick County,* 929 F.2d 1501, 1504 (10th Cir.1991) (*Carter II* ). Accordingly, we reversed the district court's determination that defendants were liable under section 1981, and reversed the court's award of compensatory and punitive damages under that section. We further observed that although under *Patterson* and *Trujillo* a discriminatory discharge was not encompassed by section 1981, it is covered by Title VII. We therefore remanded to allow the district court to clarify whether the finding of discrimination that supported the court's section 1981 ruling was equally applicable to Ms. Carter's Title VII claim, noting that the award of lost wages would be authorized under that section. We likewise held that although an award of front pay under Title VII would be within the district court's discretion, the court's failure to specify an ending date and to take into account Ms. Carter's earning capacity amounted to an abuse of that discretion.

On remand, the district court made clear that its discriminatory discharge finding applied to Ms. Carter's Title VII claim and awarded back pay. The court also ordered interest to run on its original award of attorneys fees to Ms. Carter at the rate of seven percent per annum, awarded her additional attorneys fees for the appeal, and awarded as front pay the difference between her salary at the Department and her salary with her current employer for a six-month period. Ms. Carter filed a motion for reconsideration contending that the court erred in its calculation of the interest due on the original attorneys fee award, erred in setting the amount of fees due as a result of the appeal, and erred in its award of front pay. In addition, Ms. Carter argued that as a result of the passage of the 1991 Civil Rights Act, the compensatory and punitive damages originally awarded under section 1981 should be reinstated because they were authorized under both the Act's description of conduct covered by section 1981 and by the Act's expansion of the remedies available under Title VII. The district court denied reconsideration.

Ms. Carter now appeals. She asserts that the district court's calculation of interest is directly contrary to that mandated by the applicable federal statute, 28 U.S.C. § 1961. She also argues that the court abused its discretion when setting the attorneys fee award for the first appeal by reducing the number of hours and the hourly rate. In addition, Ms. Carter contends the court's award of front pay is not adequate to make her whole. Finally, she asserts that the 1991 Act should be applied retroactively to reinstate her original award of compensatory and punitive damages. We abated the appeal pending the Supreme Court's decisions in two cases that presented the retroactivity issue with respect to several provisions of the 1991 Act, including those that Ms. Carter has argued should apply here. Those decisions have now been handed down. *See Landgraf v. USI Film Prods.,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Rivers v. Roadway Express, Inc.,* —— U.S. ——, 114 S.Ct. 1522, —— L.E.2d —— (1994).

## II.

■ The 1991 Act contains two provisions that, if applied retroactively to Ms. Carter's claims, could authorize an award of compen-

satory and punitive damages to remedy a discriminatory discharge. Under the Act and contrary to the opinions in *Patterson* and *Trujillo,* conduct remediable by section 1981 includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.A. § 1981(b) (West Supp. 1994). The Act thus encompasses the conduct at issue here within section 1981, which has always authorized the recovery of compensatory and punitive damages. The Act also specifically authorizes the recovery of compensatory and punitive damages under Title VII, *see* 42 U.S.C.A. § 1981a(a), (b) (West Supp.1994), which has always applied to claims of discriminatory discharge.[1]

█ In *Steinle v. Boeing Co.,* 24 F.3d 1250 (10th Cir.1994), we held that section 1981a of the Act, authorizing the recovery of compensatory and punitive damages under Title VII, does not apply retroactively in light of the Supreme Court's decision in *Landgraf.* Likewise, in *Simons v. Southwest Petro–Chem, Inc.,* 28 F.3d 1029 (10th Cir. 1994), we held that section 1981(b) of the Act, addressing the conduct remediable under section 1981, does not apply retroactively under *Rivers.* The analyses and holdings in those cases are equally applicable here. Accordingly, we affirm the district court's refusal to reinstate Ms. Carter's judgment for compensatory and punitive damages.

### III.

Ms. Carter takes issue with the district court's calculation of the amount of interest due on the original fee award, the amount of fees for the first appeal, and the amount of front pay. We address the propriety of each award in turn.

### A.

The district court held that Ms. Carter's attorneys were entitled to interest on their

original fee award at the rate of seven percent per annum. Ms. Carter argues that this award is directly contrary to the applicable federal statute, 28 U.S.C. § 1961. That statute, which governs the award of interest "allowed on any money judgment in a civil case recovered in a district court," provides that interest shall be calculated "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." *Id.* § 1961(a). The statute further provides that interest "shall be computed daily." *Id.* § 1961(b).

█ We held in *Transpower Constructors v. Grand River Dam Auth.,* 905 F.2d 1413, 1423–24 (10th Cir.1990), that attorneys fees are to be included as part of a money judgment upon which post-judgment interest is awarded pursuant to section 1961. Defendants concede that under our holding in *Transpower Constructors* the district court erred when it failed to follow section 1961 in awarding post-judgment interest. Nonetheless, defendants argue that the issue is moot because one of Ms. Carter's two attorneys, Beverly Dempsey, settled the issue of attorneys fees and filed a satisfaction of judgment while this appeal was pending. Defendants contend that Ms. Carter should be deemed to have acquiesced in this judgment, citing *Fidelcor Mortg. v. Insurance Co. of N. Am.,* 820 F.2d 367 (11th Cir.1987). We disagree.

*Fidelcor* applied the general rule that "when a litigant accepts the substantial benefits of a judgment, voluntarily and intentionally, and with knowledge of the facts, he waives the right to appeal an otherwise adverse judgment." *Id.* at 370. Ms. Dempsey was allowed to withdraw as counsel for Ms. Carter after the court had assessed the fees at issue here. Only thereafter did Ms.

---

**1.** Ms. Carter makes a general argument that the 1991 Act should apply retroactively rather than addressing each arguably applicable section individually. In *Landgraf v. USI Film Prods.,* — U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court observed that in assessing the retroactivity of the Act's provisions,

"courts should evaluate each provision of the Act in light of" the governing judicial principles set out in that opinion. *Id.* at ——, 114 S.Ct. at 1505. Accordingly, we consider individually the retroactive applications of the two provisions under which Ms. Carter could recover compensatory and punitive damages.

Dempsey negotiate a settlement with defendants and file a satisfaction of judgment. Neither Ms. Carter nor her other attorney were aware of this agreement at the time. Moreover, the satisfaction of judgment relates only to Ms. Dempsey's fees, interest, and expenses. Under these circumstances, the rule articulated in *Fidelcor* is not applicable. Defendants' argument that the award of fees to the attorneys is so intertwined that each cannot be considered separately is specious, particularly in view of defendants' ability to negotiate and settle a fee award only with Ms. Dempsey. Accordingly, we vacate the district court's award of post-judgment interest and remand with instructions to tax interest in accordance with section 1961.

### B.

As discussed above, Ms. Carter was represented at trial and on her first appeal by two attorneys—Ms. Dempsey, whose fees are no longer an issue by virtue of her settlement with defendants, and J. Greg Kite. Mr. Kite sought fees for his work on the first appeal in the amount of $33,500, based on 268 hours expended at an hourly rate of $125. The district court stated that it had reviewed every entry in the records submitted by Ms. Carter's attorneys, as well as attorney affidavits submitted by Ms. Carter and by defendants. The district court expressed its general concurrence in the analysis set out in defendants' attorney affidavit. The court then stated that because both of Ms. Carter's counsel sought rates of $125 an hour, the actual hourly rate was $250, which the court viewed as excessive. It went on to find that the attorneys' time records contained unnecessary and irrelevant entries and duplication of services. It addressed the problem by cutting in half the time of each attorney and by reducing the hourly rate to $100 for each attorney, which the court viewed as resulting in an actual hourly rate of $200. Ms. Carter challenges the court's decision to reduce both the number of hours and the hourly rate.

■ As we pointed out in *Carter II*, 929 F.2d at 1506, the standards for awarding fees under 42 U.S.C. § 1988 and under Title VII are the same. Determining the amount of such an award is committed to the district

court's discretion. *Zuchel v. City and County of Denver*, 997 F.2d 730, 743 (10th Cir. 1993); *Homeward Bound, Inc. v. Hissom Memorial Ctr.*, 963 F.2d 1352, 1355 (10th Cir.1992). Underlying findings are reviewed under the clearly erroneous standard, while the district court's statutory interpretation and legal analysis are subject to de novo review. *Homeward Bound*, 963 F.2d at 1355. "The presumptively 'reasonable attorney's fee' contemplated by § 1988 is the 'product of reasonable hours times a reasonable rate.'" *Id.* at 1353 (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984)).

■ We have held that it is within a district court's discretion to reduce the number of compensable hours upon determining that the claimed time spent is excessive. *See Bratcher v. Bray–Doyle Ind. Sch. Dist.*, 8 F.3d 722, 725 (10th Cir.1993); *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir.1983). Moreover, the court may make a general reduction in hours claimed to achieve what the court perceives to be a reasonable number. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir.1986). In this case, the district court reduced the number of compensable hours upon determining that the number claimed by counsel included hours that were unnecessary, irrelevant and duplicative. We have reviewed the record used by the court, and we are not convinced that the court erred in finding some duplication.

■ The setting of a reasonable hourly rate is likewise within the district court's discretion. Here, the court reduced the hourly rate for each attorney from $125 to $100 stating, "I secondly believe that the fee per hour is excessive to the extent that at most it should be $100 per hour which would then be $200 per hour addressed to attorney fees for the preparation of this brief." Aplt. App. at M–27. We conclude that in so doing the court abused its discretion.

■ As we have noted, the court reduced the hourly rate based on its view that the actual rate was the combined rates charged by each of Ms. Carter's two counsel. However, this assumption would only be valid if

both attorneys performed completely duplicate tasks. If the hours allotted to each attorney represented separate rather than duplicative tasks, the hourly rate charged by each would actually be $100 rather than $200. As set out above, the court here had already halved the number of compensable hours to account for duplication in services. Presumably, the remaining hours therefore represented separate tasks. By reducing the hourly rate in addition to reducing the number of hours, the court corrected twice for a single problem. We therefore remand to the district court with instructions to reconsider the manner in which it wishes to adjust the fee to account for any duplication in services. We point out that in setting an hourly rate, the court should establish, from information provided to it and from its own analysis of the level of performance, a rate based on the norm for comparable attorneys in private firms. *See Ramos,* 713 F.2d at 555.

### C.

▮ Finally, we turn to the amount of the court's front pay award. The court awarded Ms. Carter the difference between her former and current salary for a six-month period. The court selected six months based on its supposition that front pay "is simply an attempt to compensate for future loss during which time the plaintiff will find commensurate employment taking into account her intelligence, her skills, and her experience." *Id.* at M-15. As we discuss below, the court proceeded under an unduly restrictive view of the purpose of front pay that is not in keeping with the applicable law or the mandate of *Carter II.*

▮ The district court is vested with considerable discretion in formulating remedies for Title VII violations. *See Estate of Pitre v. Western Elec. Co.,* 975 F.2d 700, 704 (10th Cir.1992); *Carter II,* 929 F.2d at 1505. However, the exercise of this discretion must be guided by the fact that "one of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976) (quoting *Albemarle Paper Co. v.*

*Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)); *see also Estate of Pitre,* 975 F.2d at 704; *Carter II,* 929 F.2d at 1505. We have pointed out that "[i]n general, courts should strive to award 'the most complete relief possible.'" *Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1274 (10th Cir.1988) (quoting *Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373); *see also Franks,* 424 U.S. at 764 n. 21, 96 S.Ct. at 1265 n. 21 (reducing the existing earnings gap caused by past discrimination part of affording complete relief).

In keeping with the "make whole" nature of the remedies required under Title VII, this court in *Carter II* stated that a district court, when fashioning a front pay award, should ascertain the amount "required to compensate a victim for the continuing future effects of discrimination *until the victim can be made whole.*" 929 F.2d at 1505 (emphasis added). We therefore directed the court on remand "to determine the time period *required in order to make plaintiff whole.*" *Id.* (emphasis added). Ms. Carter argues persuasively that, based on the best records available, the six-month award here of $2,234.50 does not make her whole. Defendants do not dispute this assertion, citing instead to cases from other circuits that do not focus on the required "make whole" nature of Title VII relief. Accordingly, we conclude that the district court abused its discretion in its front pay award because the award does not adequately remedy the effects of defendants' past discrimination as required by the law and the mandate of *Carter II.* Although we recognize that in *Carter II* we directed the court to set an ending date for front pay based on more than guesswork, we also instructed that the court set a time period sufficient to make plaintiff whole. 929 F.2d at 1505. Because the court did not do so, we must remand for further proceedings on the calculation of an appropriate award of front pay.

The case is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.