Jack L. DAVOLL; Deborah A. Clair; and Paul L. Escobedo; on behalf of themselves and a class of persons similarly situated; Plaintiffs,

v.

Wellington WEBB, in his capacity as the Mayor of the City and County of Denver; The City and County of Denver; David L. Michaud, in his capacity as the Chief of the Denver Police Department; Elizabeth H. McCann, in her capacity as the Manager of Safety for the City and County of Denver; Civil Service Commission, for the City and County of Denver; Defendants.

UNITED STATES of America, Plaintiff,

v.

THE CITY AND COUNTY OF DENVER; and the Denver Police Department; Defendants.

Civil Action Nos. 93–K–2263, 96–K–370.

United States District Court, D. Colorado.

June 25, 1997.

David C. Feola, Craig C. Eley, Denver, CO, Merilee E. Langhoff, Littleton, CO, for Plaintiffs in Civil Action No. 93–K–2263.

Sheila M. Foran, U.S. Dept. of Justice, Civil Rights Div., Disability Rights Section, Washington, DC, for Plaintiff in Civil Action No. 96–K–370.

J. Wallace Wortham, Assistant City Attorney, Denver, CO, for Defendants in Civil Action Nos. 93–K–2263, 96–K–370.

## ORDER RE: EQUITABLE RELIEF

KANE, Senior District Judge.

On November 13, 1996, the jury rendered a verdict under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, in favor of the Plaintiffs Jack Davoll, Deborah Clair and Paul Escobedo and awarded them compensatory damages totalling $800,000.

Still to be decided are equitable relief issues. At a status conference on December 11, 1996, counsel for the respective parties stated that a hearing on these issues was unnecessary and agreed to file written submissions. Plaintiffs Jack Davoll, Deborah Clair and Paul Escobedo ("Private Plaintiffs") filed Davoll I Plaintiffs' Memorandum re: Equitable Relief and the government filed United States' Motion for Award of

Equitable Relief to Jack Davoll. In answer, Defendants' Memorandum of Law in Response to Plaintiffs' Motions for Equitable Relief and Defendants' Request to Set an Evidentiary Hearing was filed. The Private Plaintiffs and the United States filed reply briefs.

Title II of the ADA, 42 U.S.C. § 12133, incorporates the equitable relief provisions of § 505 of the Rehabilitation Act, 29 U.S.C. § 794a. Section 505, in turn, incorporates Title VII remedies, i.e. "[t]he remedies, procedures and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. § 2000e–5(f) through (k)....)" 29 U.S.C. § 794a(a)(1).

Available remedies where a defendant has been found to have discriminated on the basis of disability in violation of the ADA, 42 U.S.C. § 12132, include "reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." *See* 42 U.S.C. § 2000e–5(g).

I deny the Defendants' request for an evidentiary hearing. I grant equitable relief to each Private Plaintiff in the form of a back pay award and a front pay award in lieu of reemployment. I award interest on each back pay award at the Internal Revenue Code's underpayment rate, codified in 26 U.S.C. § 6621.

## I. *Request for Evidentiary Hearing.*

■ The Defendants request that I "set a date for a three-day evidentiary hearing as a full consideration of the facts, including the opportunity for cross-examination, is necessary in order for Defendants to establish its [sic] position with respect to Plaintiffs' requests for equitable relief." (Defs.' Mem. Law Response at 1.)

Without reserving the right to request an evidentiary hearing, defense counsel agreed at the December 11, 1996 status conference that the equitable relief issues would be addressed on the basis of the parties' written submissions. Now, without supporting the contentions in their response brief with any counterproof, such as affidavits or documen-

tary evidence, the Defendants make a belated request for an evidentiary hearing. They obliquely refer to the purpose of such a hearing, namely, to allow cross-examination regarding the Private Plaintiffs' mitigation efforts, to demonstrate actual salary increases and benefit calculations for the relevant Career Services positions, to challenge the Plaintiffs' calculations of back and front pay awards, and to rebut the Plaintiffs' assertion that hostility would make reinstatement unfeasible.

Evidence relating to several of these issues was known to the Defendants and could have been presented at the time of trial. Moreover, nothing precluded the Defendants from attaching to their response brief an offer of proof concerning each of the issues on which they request a hearing.

■ It is an axiom of our jurisprudence that courts may rely on the stipulations and statements of counsel. Here, the parties agreed on the record that the equitable issues would be resolved on the basis of written submissions. To secure a vacation of that agreement, especially after the opposing party has performed in reliance on it, requires more than a generic request vaguely asserting a desire to cross-examine or to present documents and calculations known to the Defendants before trial. At the very least, such a request must be accompanied by an offer of proof and should present as well affidavits or other reliable statements of proposed witnesses containing particularized and full recitations so that the court can see that the request "is substantial, not technical, meritorious and not frivolous." *Orebaugh v. Doskocil,* 145 Colo. 484, 359 P.2d 671, 674 (1961) (further quotation omitted). A hearing need not be held unless the offer of proof is favorable to the Defendant and would obtain a result different from that adduced on the existing record. Here, there is no showing that a hearing is required.

Because I find the Defendants have made no showing that a hearing is justified nor that it would change the outcome concerning the equitable relief issues, I deny the request for an evidentiary hearing.

## II. Back Pay.

■ The Private Plaintiffs request equitable relief in the form of back pay for Deborah Clair in the amount of $257,771.52, Paul Escobedo in the amount of $211,222.21, and Jack Davoll in the amount of $151,867.25. The United States seeks back pay on behalf of Jack Davoll in the amount of $130,125.23.[1]

The Defendants assert back pay must be limited, if not rejected, based on what alternative employment would have been available and the Private Plaintiffs' mitigation efforts or lack thereof; that the relevant time period for a back pay award is shorter than that asserted by the Plaintiffs; and that the Plaintiffs' calculations of 3% per year for salary increases and 44% of the salary per year for the benefits calculation are erroneous. The Defendants also seek a three day evidentiary hearing to allow for full consideration of the facts concerning the requests for equitable relief.

The Defendants argue, because no police officer or otherwise equivalent positions in terms of pay and status exist in the Career Service for which the Private Plaintiffs are qualified, the City and County of Denver ("City") would have reassigned them to lower paid positions within the Career Service, were it not for the City's policy at issue in the case. This position is untenable.

■ The purpose of awarding back pay is to "make whole" the victim of unlawful employment discrimination. *Whatley v. Skaggs Cos., Inc.*, 707 F.2d 1129, 1140 (10th Cir. 1983). "[G]iven a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).

■ Under the ADA, three factors are to be considered in determining the position to be used in calculating back pay: (1) whether the position was equivalent or lower in terms of status and pay, as compared with the original position; (2) whether the individual was qualified for the position; and (3) whether the position was vacant at the time the individual should have been reassigned. *See* 29 C.F.R. pt. 1630.2(*o*), App. (1997).

At trial, the Plaintiffs introduced evidence establishing that they were qualified for certain Career Service positions which were vacant at or around the time they were terminated, namely the position of Victim Advocate for Clair, Emergency Service Dispatcher for Escobedo, and Senior Criminal/Civil Investigator for Davoll. The Defendants did not challenge the fact that these positions were vacant, nor the salary ranges of the positions. Their only challenge was to suggest through cross-examination that the Plaintiffs were not qualified for the positions. In finding that the Defendants had violated the ADA, the jury found against them in this regard.

To calculate their back pay, the Plaintiffs use the salary data for the same positions identified at trial. The Defendants' suggestion that back pay should be calculated using the salaries of unidentified positions which they are considering offering to the Private Plaintiffs is too little too late and has no bearing on the issue.

---

1. The back pay calculation for Jack Davoll in the Davoll I Plaintiffs' Memorandum re: Equitable Relief ($151,867.25) differs from that in the United States' Motion for Award of Equitable Relief to Jack Davoll ($130,125.23). The difference appears primarily attributable to the fact that the United States calculation is based on placing Davoll in a Senior Criminal/Civil Investigator position at step C, while the Private Plaintiffs place him at Step N.

The Private Plaintiffs calculate Davoll's lost gross income as approximately equivalent to the monthly salary he made as a police officer, thus placing him in the upper range of the position of Senior Criminal/Civil Investigator. This accords with the . Interpretive Guidance on the ADA which requires reassignment to "an equivalent position, in terms of pay and status ... if the individual is qualified and if the position is vacant within a reasonable time." 29 C.F.R. pt. 1630.2(*o*), App. (1997), and the intention of awarding back pay—to make the plaintiff whole. Moreover, ambiguities or uncertainties as to the proper amount of a back pay award should be resolved against the offending employer, and not the victim of discrimination. *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1277 (10th Cir.1988). Accordingly, subject to the discussion below, I accept the Private Plaintiffs' calculation of Davoll's back pay at $151,867.25.

Similarly, the Defendants' claim that employees are typically hired into step A, the first step pay grade, is irrelevant and ignores the purpose of back pay to "make whole" and the requirement under the ADA that the employer reassign "to an equivalent position in terms of pay, status, etc." *See* 29 C.F.R. pt. 1630.2(*o*), App. (1997).

■ The Defendants next assert that the Private Plaintiffs have failed to mitigate their damages adequately. In addition to deducting from the back pay the Private Plaintiffs' actual earnings for the relevant period, the Defendants request me to make a deduction of the sum representing the difference between those earnings and any earnings that the Private Plaintiffs could have made had they mitigated their damages adequately.

■ "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). "Mitigation requires not success in finding alternative employment, but only a reasonable exertion to mitigate damages." *Whatley*, 707 F.2d at 1137 (further citation omitted). The effort which the aggrieved party must make to lessen damages need only be reasonable in the circumstances of the particular case. *Hidalgo Properties, Inc. v. Wachovia Mortgage Co.*, 617 F.2d 196, 200 (10th Cir.1980).

At the trial, each Private Plaintiff testified as to his or her efforts to obtain employment after their respective terminations. The Defendants present no argument or evidence challenging the efforts of Davoll and Escobedo to earn income after they were terminated. Their sole focus is on the fact that in 1995 Clair's income was $5,232.00 from her own horse carriage business and that the Private Plaintiff's expert Donald R. Vogenthaler Ph.D. evaluated Clair's post-termination earning capacity as being $22,966 per year in 1995 dollars.

Dr. Vogenthaler's projection was, however, based on general economic and vocational information, rather than on a particularized survey of the positions available to Clair in her geographic area at the time of her termination. In addition, the evidence in the record is that Clair made serious attempts to make her business a success, i.e. there is no evidence that she failed to make a reasonable exertion to earn income. In short, the Defendants have failed to carry their burden of establishing any of the Private Plaintiffs lacked reasonable diligence. *See Nord v. United States Steel Corp.*, 758 F.2d 1462, 1470–71 (11th Cir.1985).

■ The Defendants also challenge the period for which the Plaintiffs have calculated back pay on the basis that their mitigation efforts were not adequate. Clair and Escobedo have calculated back pay from 1992, and Davoll from 1993, the years of their respective terminations, through December 1996. As stated, the Defendants have not shown a failure to mitigate losses. In any event, a failure to mitigate, would reduce the amount of each award, rather shorten the time period for which back pay calculations are made.

■ The Defendants next assert the Private Plaintiffs' calculations of 3% per annum for salary increases are erroneous and do not accord with the method by which the Career Service Authority calculates increases. According to the January 11, 1997 letter of expert Dr. Vogenthaler, the rate of compensation growth, i.e. wages plus fringe benefits, has averaged 3.16%. (Davoll I Pls.' Mem. re Equitable Relief, Ex. B at (unnumbered) 2.) Moreover, a 3% cost of living adjustment for each year has been held to be "reasonable and not excessive." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1364 (11th Cir. 1994). Considering that the purpose of a back pay award is to "make whole," I do not consider the calculation of 3% per annum increase to be erroneous.

■ Also challenged, is the Private Plaintiffs' estimate of 44% of the salary per year for the benefits calculations. However, the lost benefits calculation of 44% of the lost salary figure is a conservative estimate derived from information provided by the Defendants which identified a range of 43.83% to 46.98% for total benefits for the Senior Criminal/Civil Investigator position over the years 1992 through 1996. (*See* Davoll I Pls.' Mem. re Equitable Relief, Ex. A.)

■ The Defendants further argue the back pay calculations do not deduct the value of any benefits that the Plaintiffs received or would have received had they adequately mitigated their damages. I have not found any failure to mitigate. Although the Defendants provide no proof of the value of any benefits the Plaintiffs have received from subsequent employment, the Private Plaintiffs in their reply state only Davoll has received employer-sponsored health care benefits, in the amount of $2008.50.[2] This amount should be deducted in the calculation of Davoll's back pay.

■ Finally on the back pay issue, the Defendants maintain the proper value of the benefits is their replacement value, rather than the value of the Career Service benefits. Presumably this refers to the market value of the cost to the Plaintiffs of purchasing the same bundle of benefits they would have had but for their terminations. The Defendants provide no estimate of such hypothetical replacement value, which could conceivably exceed the estimated lost benefits figure arising from the use of the Defendants' own valuation of the benefits. I reject this argument as speculative.

I award back pay to Deborah Clair in the amount of $257,771.52, Paul Escobedo in the amount of $211,222.21, and Jack Davoll in the amount of $149,858.75.

### III. Reemployment or Front Pay in Lieu of Reemployment.

A further equitable remedy recognized by the Tenth Circuit is reemployment or, alternatively, front pay in lieu of reemployment. See, e.g., Carter v. Sedgwick County, 36 F.3d 952, 957 (10th Cir.1994); Fitzgerald v. Sirloin Stockade, 624 F.2d 945, 957 (10th Cir. 1980).

The Davoll I Plaintiffs seek front pay for Deborah Clair in the sum of $394,068.69 and for Paul Escobedo in the amount of $368,082.87, and either reemployment of Jack Davoll on certain conditions or front pay in lieu thereof in the amount of $400,521.47. The United States seek an order requiring the Defendants to place Jack Davoll in the next vacant Senior Criminal/Civil Investigator position, and award him all benefits for that position retroactive to July 3, 1993.

■ In determining whether to order reemployment, the Tenth Circuit weighs whether it is reasonable or practical to expect the victim of discrimination to return to work for the discriminatory employer. Griffith v. State of Colorado, 17 F.3d 1323, 1330 (10th Cir.1994). Where reinstatement is not a reasonable remedy, front pay may be awarded instead to compensate a victim for the continuing future effects of discrimination until the victim can be made whole. Pitre v. Western Electric Co., Inc., 843 F.2d 1262, 1278–79 (10th Cir.1988).

Jack Davoll is willing to pursue reemployment, in particular in the vacant position of Senior Criminal/Civil Investigator, subject to certain specified conditions. Deborah Clair and Paul Escobedo view reemployment as unreasonable, impractical and intolerable.

In their response brief the Defendants assert they are "considering tendering unconditional reinstatement offers" to the Private Plaintiffs. (Defs.' Mem. Law Resp. Pls.' Mots. Equitable Relief at 7.) The Defendants provide no information as to the titles, salaries, or benefits of the positions supposedly under consideration. They object to Davoll's proposed condition of reemployment at reasonably equal pay to that which he received before termination. The Defendants again reason it is within their prerogative to assign Davoll to a lower paid position since there are no equivalent positions in terms of salary in the Career Service to that held by Davoll in the Civil Service.

As discussed in relation to the issue of back pay, the jury rejected this approach. The Defendants nevertheless indicate their persistence in refusing to comply with the requirement of the ADA that a plaintiff be reinstated to a vacant position of equivalent pay for which he is qualified.

At the hearing on December 11, 1996, despite my remarks that reemployment did not

2. The estimated amount in the Private Plaintiffs' reply brief is $2008.00. (Davoll I Pls.' Reply re: Equitable Relief at 9.) More accurately, Davoll received $2008.50 in contributions toward employee benefits from March through December 1996. (See United States Reply at 11 n. 25.)

appear to be of interest to the Defendants based on their trial presentation, defense counsel made no suggestion that the Defendants were considering reemployment. Nor did he object to the submission of the issue of front pay through briefing, or reserve the right to later seek an evidentiary hearing. This, coupled with the Defendants' belated post-trial indication of possible tenders of reemployment in unspecified positions at not necessarily equivalent pay, leads me to question the Defendants' *bona fides* in this regard.

The statute allows for an award of any equitable relief the court deems appropriate. 42 U.S.C. § 2000e–5(g). I have broad discretion in fashioning relief to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the Plaintiffs to the position each would have likely enjoyed had it not been for the discrimination. *See Fitzgerald*, 624 F.2d at 957. In making this determination, I am not confined to facts determinative of the issue of the Plaintiffs' termination, but may rely on all of the evidence adduced at trial and may draw all reasonable inferences therefrom. *EEOC v. General Lines, Inc.*, 865 F.2d 1555, 1562 (10th Cir.1989).

While reinstatement may be the preferred remedy, it is not appropriate when the employer " 'has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible.' " *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1157 (10th Cir.1990) (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1171–73 (10th Cir. 1985)). In *EEOC v. General Lines, Inc.*, 865 F.2d at 1564, the Tenth Circuit rejected the argument that the "extreme hostility" standard had not been met and affirmed the criterion for reinstatement identified in *Sirloin Stockade*, 624 F.2d at 957, as the need for a "warm relationship."

I find the testimony presented at trial, the briefs submitted, the persistent tension between the Private Plaintiffs and the City, the animosity caused by this lawsuit, and the City's continued reluctance to provide comparable alternative employment evidence a high degree of magnitude of hostility and make it improbable that there could be a "warm relationship." I therefore do not find reinstatement to be a reasonable remedy.

If reinstatement is inappropriate, the plaintiff is entitled to an award of front pay. *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 638 (10th Cir.1988). Decisions concerning front pay fall within my discretion. *See Carter*, 36 F.3d at 957. I conclude that each Private Plaintiff is entitled to an award of front pay to compensate for the continuing future effects of discrimination until each can be made whole. *See id.*

The burden falls on the plaintiff to prove an amount, if any, of a front pay award. *Hansel v. Public Serv. Co. of Colorado*, 778 F.Supp. 1126, 1136 (D.Colo.1991). Quantification of front pay cannot be speculative; there must some basis in the record upon which to base an award of future earnings. *Id.* at 1135. A front pay award must specify an ending date and must take into account any amount that the plaintiff could earn using reasonable efforts. *Carter v. Sedgwick County*, 929 F.2d 1501, 1505 (10th Cir.1991).

Clair seeks front pay in lieu of reemployment in the amount of $394,068.69, Escobedo in the amount of $368,082.87, and Davoll in the amount of $400,521.47. These figures represent the balance of accumulated losses from 1997 through each Plaintiff's work life expectancy. The starting point for calculation of the front pay award used by each is a combined lost salary with benefits figure calculation for 1996 in the back pay analysis of each. That figure is then increased at 3% per year to reflect anticipated cost of living and merit increases. Subtracted from this each year is Dr. Vogenthaler's estimate of what each Private Plaintiff could reasonably expect to earn in non-city employment, including benefits measured using the national average for benefits of 22% of anticipated salary.

Dr. Vogenthaler opines each Plaintiff's work life expectancy in non-city employment is less than if he or she had been reemployed and stayed working in positions that reasonably accommodate the disabilities of each.

This is based on statistical data taking into account each Plaintiff's disabilities, gender, education, background and training.

With regard to whether the future loss stream should be discounted to present value, *see Prudential,* 763 F.2d at 1173, Dr. Vogenthaler maintains that there is little or no "discount" to net present value. In fact, Dr. Vogenthaler prefers the use of the total offset method, rather than any other type of present value calculation. Under this approach, which recognizes the inherent unpredictability of the future relationship between interest rates and the growth in wages or total compensation, the cost in terms of today's dollars is the present value of the future costs.

 The Defendants' assertion that the term of the front pay awards should be short on account of the large compensatory awards by the jury is without merit. Whereas compensatory damages are designed to recompense plaintiffs for emotional harm, front pay is designed to make the employee whole for a reasonable future period, required for an employee to re-establish his or her rightful place in the job market. *See Hansel,* 778 F.Supp. at 1135; *Pitre v. Western Elec. Co.,* 843 F.2d at 1279 n. 10.

Nor, however, do I find support for the Plaintiffs' assertion that "[t]he Tenth Circuit's position on the proper length of front pay is work life expectancy." (Davoll I Pls.' Reply re: Equitable Relief at 15.) Their reliance on *Pitre,* 843 F.2d at 1278–79, in this regard is misplaced. There, the Tenth Circuit stated "front pay is intended to compensate victims for the continuing future effects of discrimination until the victim can be made whole." *Id.* at 1278 (emphasis in original). The appeals court stressed that the ultimate fashioning of equitable relief is left to the district court's judgment. *Id.* at 1279–80.

 Work life expectancy is one factor to be taken into account when assessing a front pay award. *Hansel,* 778 F.Supp. at 1136. Other factors include salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustments, the reasonable availability of other work opportunities, the period within which a plaintiff may become reemployed with reasonable efforts and methods to discount any award to net present value. *Id.* (citing *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985)).

 Exercising my wide latitude of discretion, I am not inclined to award front pay to each Private Plaintiff for the periods sought. I consider that an award of front pay to each Private Plaintiff in the amount calculated by Dr. Vogenthaler from 1997 through 1999, a period of two years, will allow each a reasonable amount of time to find comparable employment. *See Dominic v. Consolidated Edison Co. of N.Y.,* 822 F.2d 1249, 1258 (2d Cir.1987) (finding that two years was a reasonable amount of time for the plaintiff to find comparable employment); *Reeder–Baker v. Lincoln Nat'l Corp.,* 649 F.Supp., 647, 662 (N.D.Ind.1986) (awarding front pay for two years). This a conservative estimate of the time needed to make each Plaintiff whole for a reasonable future period.

Further, I am satisfied that, through credible expert evidence, the Plaintiffs have established that a zero discount is appropriate. The Defendants had the opportunity to rebut this information but have failed to do so.

## IV. *Prejudgment and Postjudgment Interest.*

 The Defendants' challenge to the Plaintiffs' request for prejudgment interest on back pay and postjudgment interest of front pay and back pay is without merit. Prejudgment interest on a back pay award is appropriate, "[o]therwise, the employer would have an 'interest free' loan on wages due, but unpaid." *Daniel v. Loveridge,* 32 F.3d 1472, 1478 (10th Cir.1994).

 Further, in determining prejudgment interest in discrimination cases, many courts have applied the Internal Revenue Code's underpayment rate, codified in 26 U.S.C. § 6621, because "[p]rejudgment interest at the § 6621 rate is more consonant with the make 'whole' purpose of Title VII," *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 572 F.Supp. 494, 495 (D.Conn.1983). Contrary to the Defendants' submission, 28 U.S.C. § 1961 is

expressly applicable to the calculation of postjudgment interest. The relevant Internal Revenue Code's underpayment rates shall apply to the prejudgment interest on the back pay awards for the applicable periods.

The Plaintiffs request I award postjudgment interest under the Internal Revenue Code rates on the back pay and front pay awards during the pendency of any appeal pursued by the Defendants. To the extent any post judgment interest is warranted, it should be calculated at the rate set forth in 28 U.S.C. § 1961.

## V. *Conclusion.*

For the aforesaid reasons, I deny the Defendants' request to set an evidentiary hearing. I award back pay to Deborah Clair in the amount of $257,771.52, Paul Escobedo in the amount of $211,222.21, and Jack Davoll in the amount of $149,858.75. I award front pay in lieu of reemployment to Deborah Clair, Paul Escobedo and Jack Davoll for the period January 1997 through December 1999, to be calculated in accordance with this order. I award prejudgment interest on the back pay awards, to be calculated at the Internal Revenue Code's underpayment rate, codified in 26 U.S.C. § 6621.

On or before July 8, 1997, the Plaintiffs shall submit a draft judgment consistent with the jury verdicts and with this order.