**Peggy DEGHAND, Plaintiff,**

v.

**WAL-MART STORES, INC., Defendant.**

**No. 94–4172–SAC.**

United States District Court,
D. Kansas.

Sept. 8, 1997.

As Corrected Sept. 9, 1997.

Amy C. Bixler, Alan G. Warner, Warner, Bixler & Associates, L.L.C., Topeka, KS, for Plaintiff.

Shelly L. Freeman, John R. Phillips, Paul F. Pautler, Jr., Julianne Popper, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This employment discrimination case is set for trial on the plaintiff's following three claims: (1) that in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(4), the defendant constructively discharged and mistreated the plaintiff because of her association with her disabled husband; (2) that in violation of Kansas common law, the defendant retaliated against the plaintiff because the plaintiff's husband, who also worked for the defendant, filed a worker's compensation claim; and (3) that in violation of Kansas common law, the defendant defamed the plaintiff in an employee's letter published to the defendant's management. The plaintiff alleges the defendant's retaliatory conduct began in July of 1993, "after her husband suffered a mental breakdown." (Dk. 82, p. 4). The parties have stipulated that from and after July 18, 1993, the plaintiff's husband was a disabled person as defined by the ADA.

## DEFENDANT'S REQUEST FOR JUROR QUESTIONNAIRE (Dk. 97).

The defendant believes a likely subject during the voir dire process will be the depression that disabled the plaintiff's husband. The defendant argues a confidential juror questionnaire could protect a juror's privacy interest in such sensitive matters as depression, employment-related injuries, discipline in the work place, and employment termination. The defendant opines the questionnaire would avoid potential prejudice to the defendant and would shorten the jury selection process. The plaintiff has filed no response to this motion.

Voir dire examination is intended to enable the court to select an impartial jury and to assist counsel in using their peremptory challenges. *Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493 (1991). The conduct and content of voir dire are matters entrusted to the trial court's broad discretion. *United States v. Maldonado–Rivera,* 922 F.2d 934, 970 (2nd Cir.1990) *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025, 1026 (1991). The Supreme Court more recently reminded us that:

It is true that "[v]oir dire 'is conducted under the supervision of the court and a great deal must, of necessity, be left to its sound discretion.'" (citations omitted). The Constitution, after all, does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury. Even so, part of the guaranty of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. (citations omitted). "Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evalu-

ate the evidence cannot be fulfilled." (citation omitted). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness." (citation omitted). *Morgan v. Illinois,* 504 U.S. 719, 729–30, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992).

 "The judge decides what questions may be addressed to the jury panel, and 'although the questioning must be fair, it need not include specific points requested by a particular defendant.'" *Maldonado–Rivera,* 922 F.2d at 970 (quoting *United States v. Tutino,* 883 F.2d 1125, 1133 (2nd Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)). The voir dire examination is adequate if it tests the qualifications and competency of the prospective jurors and if the tests employed reasonably assure that prejudice, if present, would have been discovered. *United States v. Flores,* 63 F.3d 1342, 1353 (5th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996); *United States v. Bedonie,* 913 F.2d 782, 795 (10th Cir.1990), *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

In the typical case, a written questionnaire may work a savings in time when the prospective juror's written responses are made under penalty of perjury and can substitute for the oral voir dire. This savings in time is not without a cost. The court, the parties and their attorneys lose the opportunity to observe demeanor. The Supreme Court said in *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981):

> Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.

The Supreme Court echoed this same concern about observing juror demeanor in *Mu'Min,* when the defendant argued that pretrial written questionnaires would allow the juror to disclose the content of pretrial publicity. 500 U.S. at 424–25, 111 S.Ct. at 1905. ("[S]uch written answers would not give counsel or the court any exposure to the demeanor of the juror in the course of answering the content questions.") How a person says something can be as telling as what a person says.

 It goes without question that a case directly implicating sensitive, personal, moral or religious issues may warrant written jury questionnaires. The court, however, believes the sensitive issues here are not likely to involve a significant number of jurors. The court further believes that these matters can be adequately handled through standard oral voir dire procedures. General questions will determine those panel members who may have something more to say that could embarrass the panel member, compromise a privacy interest, or prejudice the jury panel. If necessary, such a panel member will be questioned at the bench outside the hearing of other panel members. This procedure is as effective as written questionnaires. *See Tomson v. Stephan,* 699 F.Supp. 860 (D.Kan. 1988). The defendant's motion for leave to submit jury questionnaire is denied.

### DEFENDANT'S MOTION IN LIMINE (Dk. 91).

Citing Rules 401 and 403 of the Federal Rules of Evidence, the defendant moves to exclude the following areas of evidence as speculative, irrelevant, unfairly prejudicial and likely to confuse the issues and to mislead the jury.

 A creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence, the motion in limine gives the court the opportunity to take up before trial those certain and limited evidentiary issues in order to minimize interruptions at trial. *Banque Hypothecaire Du Canton v. Union Mines, Inc.,* 652 F.Supp. 1400, 1401 (D.Md.1987). The propriety of entering an order in limine depends on the particular situation. *Cipollone v. Liggett Group, Inc.,* 644 F.Supp. 283, 286 (D.N.J.1986). If the admissibility of certain evidence turns upon what facts are developed at trial, it is the

better practice to wait until trial to decide the objections. *See Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975); *Hunter v. Blair,* 120 F.R.D. 667 (S.D.Ohio 1987). In its discretion, the court may decline deciding a motion in limine which would have little impact on the parties' evidentiary burdens or preparation for trial. *Cipollone,* 644 F.Supp. at 286. A ruling in limine may be subject to change based upon developments at trial, and the ruling does not remove the obligation of the party to object, to move to strike, or to make offers of proof. *Thweatt v. Ontko,* 814 F.2d 1466, 1470 (10th Cir.1987).

### *Testimony and Evidence of Plaintiff's Economic Expert*

 The defendant argues that the opinion of the plaintiff's economic expert, Dr. Gary Baker, should be excluded because it is "not based upon an accurate factual foundation." (Dk. 91). The defendant complains that Dr. Baker was not given and did not rely on a complete history of the plaintiff's earnings at Sam's Club. As reflected in his report attached to the plaintiff's response, Dr. Baker bases his calculations on the following employment history:

> The loss on income to Peggy Degland (sic) began on October 7, 1993, the date her employment was terminated by the management of Sam's Club. At the time of her dismissal she was working 37.5 hours per week earning $9.20 per hour. She was expected to work one Sunday per month for which she was paid time and one half.
>
> During the year Ms. Degland (sic) worked 1,950 hours at $9.20 for an annual income of $17,940. Each month Ms. Degland (sic) worked 7.5 hours at time and one-half. This would be a premium of $4.60 per hour on Sundays. This would had an additional income of $414 per year. Peggy Degland's (sic) annual compensation was $18,354.

(Dk. 94, Ex. 2). The plaintiff argues that her expert was provided with sufficient, reliable information and that the assumptions underlying his opinion are both reasonable and necessary.

 Trial courts enjoy broad discretion in determining the admissibility of expert testimony. *Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir.1996). "An expert opinion must be based on facts that enable the expert 'to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required.'" *Id.* (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 662 (11th Cir.1988)).

Rule 703 of the Federal Rules of Evidence provides that: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Rule 705 further provides that: "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

 Thus, an expert may rely on facts that have not been admitted if reliance on them is reasonable for experts in that field. *Intern. Adhesive Coating v. Bolton Emerson Intern.,* 851 F.2d 540, 544 (1st Cir.1988). It is not a required condition that an expert disclose the factual basis of his opinion before so testifying. *Id.* The operation of these rules "place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *Smith v. Ford Motor Co.,* 626 F.2d 784, 793 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). Still, these rules do not create any automatic entitlement, for the trial court retains "considerable latitude over the order in which evidence will be presented to the jury." *University of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200, 1218 (1st Cir. 1993). "[A]t a minimum the rules suggest that the proponent must be prepared, if the court so requires, to make a limited offer of proof to aid the court in its assessment" whether the expert's basis is of a type reasonably relied on by experts in the field. *Id.*

As disclosed in his deposition and report, Dr. Baker relied on the plaintiff's counsel to

provide him the necessary employment history from which he would calculate back pay or front pay. The court presumes counsel provided the expert with reliable data concerning the plaintiff's rate of pay at the time of discharge and the average number of hours she worked per week. The defendant's dispute with these numbers is a matter that goes not to the admissibility but to the weight of Dr. Baker's opinion which can be fully explored in the defendant's cross-examination.

The plaintiff should be prepared to proffer some factual basis for Dr. Baker's assumptions concerning the number and rate of salary increases that the plaintiff would have received. The plaintiff also should be prepared to proffer a factual basis for Dr. Baker's assumption concerning when the plaintiff's employment with defendant would have ended for the reason of voluntary resignation, retention of other employment, lawful termination or retirement. As for wages that the plaintiff later earned or is likely to earn from other employment, the court will not prevent Dr. Baker from testifying simply because he did not address such deductions in his report or deposition. To avoid confusing and misleading the jury, the plaintiff should be prepared to have Dr. Baker deduct from his back pay calculations the plaintiff's actual earnings from other employment. The court denies the defendant's motion in limine on the evidence and testimony of Dr. Baker. Absent a timely objection at trial, the court will not revisit this ruling or require any proffer from the plaintiff.

### Testimony and Evidence of Front Pay and Future Benefits

■ The defendant's issue is not whether front pay is a recoverable element of damages under the plaintiff's remaining legal theories. Rather, the defendant argues a front pay award here is unnecessary, speculative, and not justified by the circumstances. The defendant relies principally on Title VII case law which does apply to the plaintiff's remaining ADA association claim. *See Doane v.City of Omaha*, 115 F.3d 624, 629 (8th Cir.1997) ("The ADA provides that the Title VII remedies apply to any person alleging

discrimination on the basis of a disability. 42 U.S.C. § 12117(a).") Because there are unsettled issues with even what Title VII damage elements should go to the jury, *see, e.g., Davoll v. Webb*, 968 F.Supp. 549 (D.Colo. 1997) (Compensatory damages submitted to the jury, and elements of back pay and front pay reserved for the court); *McCue v. State of Kansas, Dept. of Human Resources*, 948 F.Supp. 965 (D.Kan.1996) (Back pay is an equitable remedy for the court, and front pay is a jury issue under 42 U.S.C. § 1981a(b)(3)), because the recoverable elements of damages under the state law retaliation claim and the federal ADA claim are substantially the same, and because the plaintiff appears to allege the same injuries under the two claims, the court will look to the state law on damages for the trial and jury instructions. The court will reserve any issues and arguments unique to ADA/Title VII damages for a post-trial decision, if necessary.

The defendant's arguments against submitting front pay to the jury are not suited for a ruling in limine and presumably will be argued and considered in the jury instructions. The defendant may renew its arguments during trial after the court has had an opportunity to hear the plaintiff's evidence in these areas. The court denies the defendant's motion in limine concerning the evidence and testimony on front pay.

### Testimony and Evidence of Plaintiff's Husband's Disability

■ The following stipulation appears in the pretrial order: "Defendant knew that Anthony Deghand [the plaintiff's husband] was a disabled person as defined by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, from and after July 18, 1993." (Dk. 82, p. 13). Based on this stipulation, the defendant argues that the plaintiff has no reason to introduce evidence of her husband's condition and that such evidence would confuse the jury and arouse their sympathy. The plaintiff responds that she will not introduce evidence to prove what has been stipulated and will not introduce medical evidence concerning the details of her husband's disability or worker's compensa-

tion claim. The plaintiff does state: "However, both the Plaintiff and Mr. Deghand will discuss his workers' compensation claim as well as his disability only to the extend (sic) necessary to form the basis of Plaintiff's claims." (Dk. 95, p. 7).

The plaintiff does not explain how a discussion of Mr. Deghand's worker's compensation claim or disability is necessary to her claims. The court anticipates the plaintiff will need to give a very general explanation of these matters as a background for the jury. Beyond this, the court could only speculate what other need the plaintiff may have for such evidence. The court denies the motion in limine but with the caveat that an objection to detailed evidence on these matters may be sustained on the basis of Rule 403.

### Testimony and Evidence of the Plaintiff's Hypertension

The plaintiff originally brought an ADA claim based on her own alleged disability of hypertension. The court granted summary judgment against the plaintiff on this claim. (Dk. 81, pp. 10–16). Based on this ruling, the defendant argues the plaintiff's hypertension is no longer an issue in this case. The plaintiff responds that she will introduce evidence of this condition to show it existed and "its relation to the hostile working environment that existed at Sam's Club." (Dk. 95, p. 8).

Based on the plaintiff's remaining claims and allegations of harm, the court cannot rule out the possible relevance of the plaintiff's hypertension. The plaintiff, however, should be prepared during trial to do a better job of articulating the relevant nexus between her condition and her remaining claims.

### Evidence of Subordinate Employees' Assessment of Plaintiff's Work

The defendant anticipates that the plaintiff will call several current and former employees of the defendant to testify concerning "their experiences with plaintiff in the workplace." (Dk. 91, p. 9). The defendant argues these employees who worked under the plaintiff or worked other lower-level positions were not in a position to evaluate the plaintiff's work performance. For this reason, the defendant considers the testimony of these witnesses to be "irrelevant." Alternatively, the defendant argues the testimony of these witnesses should be excluded as cumulative. The plaintiff says these witnesses will testify about her performance at the work place and the conditions under which she worked. The plaintiff argues these employers were in a position to evaluate her work on a daily basis. The plaintiff denies any intention to present witnesses whose only testimony would be cumulative.

The defendant has not shown that these witnesses will be unable to testify to matters plainly relevant to the plaintiff's claims or to the defendant's business reasons for the adverse employment actions. Such objections going to personal knowledge are best reserved for trial. For these reasons, the court denies the defendant's motion in limine.

IT IS THEREFORE ORDERED that the defendant's request for juror questionnaire (Dk. 97) and the defendant's motion in limine (Dk. 91) are denied.